**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CREATIVE GIFTS, INC.
  17953 Marine View Drive
  Normandy Park, WA 98166

and

FASCINATIONS TOYS & GIFTS, INC.
    19224 Des Moines Way So.
    Suite 100
    Seattle, WA 98148

and

WILLIAM HONES
  17953 Marine View Drive
  Normandy Park, WA 98166

        Plaintiffs,

v.

UFO
  Box 119A
  Kingston, NM 88042

and

MICHAEL SHERLOCK
  Kingston, NM 88042

and

KAREN SHERLOCK
  Kingston, NM 88042

        Defendants.

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

97 SEP 24 PM 3: 51

[signature]
CLERK-ALBUQUERQUE

CIV 97 1266 LH
97 Civ. _____ (___)

RICHARD L. PUGLISI

COMPLAINT FOR WILLFUL INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK, FALSE DESIGNATION OF ORIGIN, DILUTION OF A FAMOUS TRADEMARK, DILUTION OF AND INJURY TO BUSINESS REPUTATION, UNFAIR TRADE PRACTICES, DEFAMATION, AND <u>INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS</u>

    Plaintiffs, Creative Gifts, Inc., Fascinations Toys and Gifts, Inc., and William Hones,

through their attorneys, complaining of UFO, Michael Sherlock and Karen Sherlock herein,

allege as follows:

1

## THE PARTIES

1. Plaintiff, Creative Gifts, Inc. ("Creative Gifts") is a corporation organized and existing under the laws of the State of Washington, located and doing business at 17953 Marine View Drive, Seattle, Washington 98166.

2. Plaintiff, Fascinations Toys and Gifts, Inc. ("Fascinations") is a corporation organized and existing under the laws of the State of Washington, located and doing business at 19224 Des Moines Way So., Suite 100, Seattle, Washington 98148.

3. Plaintiff, William Hones ("Hones") is an individual residing at 17953 Marine View Drive, Seattle, Washington 98166. Hones is now, and at all times mentioned herein has been, the vice president of Creative Gifts and the president of Fascinations. Unless otherwise specified, plaintiffs Creative Gifts, Fascinations and Hones will hereinafter be collectively referred to as "plaintiffs."

4. Upon information and belief, Defendant, UFO is located and doing business at Box 119A, Kingston, New Mexico 88042.

5. Upon information and belief, Defendant, Michael Sherlock is an individual residing at Kingston, New Mexico 88042. Michael Sherlock is now, and at all times mentioned herein has been involved in the running of UFO. Michael Sherlock identifies himself as one of the "managing directors" of UFO.

6. Upon information and belief, Defendant, Karen Sherlock is an individual residing at Kingston, New Mexico 88042. Karen Sherlock is now, and at all times mentioned herein has been involved in the running of UFO. Karen Sherlock identifies herself as one of the "managing directors" of UFO. Unless otherwise specified, defendants Michael Sherlock and Karen Sherlock

will hereinafter be collectively referred to as "the Sherlocks." Further, unless otherwise specified, defendants UFO, Michael Sherlock and Karen Sherlock will hereinafter be collectively referred to as "defendants."

## NATURE OF ACTION, JURISDICTION AND VENUE

7.      This action is for federal trademark infringement, false designation of origin, federal trademark dilution, dilution and injury to business reputation, unfair trade practices, defamation, and unintentional interference with prospective contractual relations.

8.      Jurisdiction is proper in this Court pursuant to 15 U.S.C. §1121 (actions arising under the Federal Trademark Act), 28 U.S.C. §1338(a) and (b) (acts of Congress relating to trademarks and civil actions asserting a claim of unfair competition), the doctrine of pendant jurisdiction as codified at 28 U.S.C. §1367, and 28 U.S.C. §1332 (diversity of citizenship). The amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

9.      Venue is proper in this District pursuant to 28 U.S.C. §1391.

## BACCKGROUND OF THE CASE

10.     Since June 1994, Creative Gifts has marketed magnetic levitating devices through mail order catalogs and various distributors. The magnetic levitating devices are novelty items that include a magnetic floating top and an associated base.

11. On April 4, 1995, U.S. Patent No. 5,404,062 was duly and legally issued to Creative Gifts as the assignee of Hones and his father and co-inventor, Edward Hones, for a "Magnetic Levitating Device and Method" ("the '062 Patent"). Creative Gifts is and has been at all times the owner of the '062 patent.

3

12. Creative Gifts is the owner of U.S. Trademark Registration No. 1,896,265 which issued on May 30, 1995 for LEVITRON® and design for a novelty item, namely a magnetic floating top with an associated base.

13. To ensure that high quality magnetic levitating devices are readily available to consumers throughout the world, Creative Gifts has licensed the manufacture and sale of magnetic levitating devices in a limited manner which ensures compliance with Creative Gifts' rigorous standards for product excellence. Specifically, Creative Gifts has only granted a license to manufacture and sell the magnetic levitating devices to Fascinations. In turn, Fascinations has granted a sublicense to Masudaya of Japan to manufacture and sell the magnetic levitating devices in Japan. Magnetic levitating devices manufactured pursuant to the license granted by Creative Gifts to Fascinations are sold by Fascinations under Creative Gifts' LEVITRON® trademark. Fascinations is licensed by Creative Gifts to use the LEVITRON® trademark.

14. Commencing in 1994, Creative Gifts and its licensee, Fascinations, have used the LEVITRON® trademark on magnetic levitating devices and such use has caused the LEVITRON® trademark to have acquired a reputation both in the trade and among the purchasing public as identifying magnetic levitating devices of superior quality emanating from a single source. The LEVITRON® mark is distinctive and famous.

15. From 1994 to date, domestic sales of authorized magnetic levitating devices by Fascinations under the LEVITRON® trademark have been substantial.

16. From 1994 to date, worldwide sales of authorized magnetic levitating devices by Fascinations and its sublicensee, Masudaya, have been substantial.

4

17. More than $198,000 in advertising and promotion in magazines, newspapers, trade shows, television spots and other media has been spent by Fascinations.

18. On information and belief, in or about December 1995, the Sherlocks were first introduced to the LEVITRON® device. Impressed with the enjoyment and intrigue provided by the LEVITRON® device, the Sherlocks contacted Hones and disclosed to him the Sherlocks' intention to produce an instructional video to teach people how to fly the LEVITRON® device.

19. On information and belief, defendants produced an instructional video for the purpose of teaching people how to fly the LEVITRON® device.

20. On information and belief, in 1996, defendants developed a business relationship with Fascinations wherein Fascinations agreed to sell magnetic levitating devices to defendants for retail directly to customers. On information and belief, defendants included a free copy of the instructional video to customers who purchased the LEVITRON® devices. As a further sales and marketing tool, defendants established a web-site having the domain name LEVITRON.com, on which the LEVITRON® devices purchased from Fascinations were offered for sale, along with defendants' video.

21. On information and belief, in or about August 1996, defendants, in an effort to increase sales and profits, began advertising LEVITRON® devices and UFO's instructional video on the Art Bell nationally syndicated talk radio show ("Art Bell show").

22. On information and belief, the Art Bell show, which includes the Dreamland and Coast to Coast radio programs, deals with science fiction and the paranormal, and its host, Art Bell, is consistently ranked as one of the top four radio talk show hosts, along with Howard

Stern, Rush Limbaugh and Dr. Laura Schlessinger.

23. On information and belief, as a direct result of defendants' advertising on the Art Bell show, defendants sales of LEVITRON® devices increased dramatically.

24. On or about December 30, 1996, Fascinations sent defendants 852 LEVITRON® devices along with an invoice for $14,081.40.

25. To date, defendants owe Fascinations $10,000 and have shown no intentions of fulfilling that obligation.

26. On or about August 20, 1997, the Sherlocks sent a letter to Hones in which they stated their intentions to "go public" on the Art Bell show with unsupported allegations regarding the invention of Hones' LEVITRON® devices and Hones' purported improper behavior.

27. On or about August 22, 1997, Gary Armstrong ("Armstrong"), a Marketing Director for Fascinations, telephoned Chancellor Broadcasting Corporation ("CBC") and spoke with Yutte Stensgaard ("Stensgaard") regarding the allegations raised by the Sherlocks. Stensgaard read to Armstrong a statement which the Sherlocks had forwarded to CBC for publication on the Art Bell show. Following that discussion, Stensgaard elected to remove from the Sherlocks' statement a section requesting customers to boycott all LEVITRON® devices originating from Hones, Fascinations or Creative Gifts.

28. During the August 22, 1997 telephone discussion with Stensgaard, Armstrong expressed an interest in advertising Fascinations' LEVITRON® devices on the Art Bell radio programs.

29. Between August 22, 1997 and September 3, 1997, Armstrong and Stensgaard had numerous discussions regarding the spots available to Fascinations for advertising its

6

LEVITRON® devices on Art Bell's Dreamland and Coast to Coast radio programs.

30. Concerned with the allegations raised by the Sherlocks, Stensgaard requested from Fascinations' attorney a letter assuring CBC that Fascinations (a) had the rights to sell LEVITRON® products, (b) is the licensee of the LEVITRON® trademark, and (c) would indemnify CBC should any legal action result from CBC's advertising of the LEVITRON® products. Saul Leitner, Fascinations' attorney, provided CBC with those assurances in a letter dated August 29, 1997. Stensgaard acknowledged receipt of the August 29, 1997 letter during a telephone conversation with Armstrong on or about September 3, 1997.

31. On or about September 3, 1997, Stensgaard called Armstrong and (a) verified that the advertising dates selected by Fascinations were available (i.e., for the Dreamland radio program which is aired each Sunday night, Fascinations requested 13 weeks of advertising, beginning on September 21, 1997, and consisting of two spots per night); (b) extended to Fascinations the option of purchasing additional spots on the Dreamland radio program through the end of 1997; (c) suggested that open advertising spots may be available near Christmas on the Coast to Coast radio show; and (d) stated her intent to send an advertising contract to Fascinations on or before September 5, 1997.

32. On or about September 5, 1997, following a conversation on or about that same date with Michael Sherlock, Stensgaard informed Fascinations that CBC would not allow Fascinations to advertise on the Art Bell radio programs until the situation surrounding the LEVITRON® devices was cleared up. On information and belief, that decision was made by the president of CBC following a conversation between the president of CBC and Stensgaard, which was prompted by allegations raised by Michael Sherlock to Stensgaard regarding Creative

7

Gifts' LEVITRON® devices and Creative Gifts' rights in and to the LEVITRON® trademark.

33. On August 28, 1997, Creative Gifts, through its attorneys, informed defendants of its trademark rights in the LEVITRON® mark and demanded that defendants immediately cease all use of the LEVITRON.com domain name and surrender that domain name to Creative Gifts.

34. Defendants have refused to surrender the LEVITRON.com domain name and cease all unauthorized use of Creative Gifts' LEVITRON® mark.

35. On or about August 24, 1997, defendants published an article entitled "The Hidden History of the Levitron" on its home page, having an address at www.levitron.com. In that article, defendants personally attack Hones, calling him a "thief", "liar" and "villain", and generally portray Hones as being a fraud.

36. As of September 24, 1997, over 7,500 visits to the defendants' home page on which the defamatory article is published have been recorded, which correlates into an average of over 250 persons visiting the page each day.

37. The article invites feedback from readers and publishes those comments on a "Feedback" page. The overwhelming majority of responses posted on the "Feedback" page suggest that readers have believed the negative views and untruths presented in the article and have adopted a negative opinion of Hones.

## COUNT I
## WILLFUL INFRINGEMENT OF FEDERALLY REGISTERED MARK

38. This count, arising under Section 32 of the Trademark Act of 1946 (15 U.S.C. §1114), is for infringement of Creative Gifts' U.S. Trademark Registration No. 1,896,265.

39. Plaintiffs reallege each and every allegation as set forth in paragraphs 1-37 of the

8

Complaint as fully set forth herein.

40. Long after Creative Gifts' adoption, use and registration of its LEVITRON® trademark, defendants have jointly and severally used the LEVITRON® mark by various acts, including using the domain name LEVITRON.com to promote sales of defendants instructional videos, entitling its home page "LEVITRON CENTRAL" and "The Amazing Levitron Anti-Gravity Top Home Page", referring to UFO as "The Levitron Company", and otherwise using the LEVITRON® mark in connection with the sale of defendants' instructional videos. Since at least August 28, 1997, the use of the trademark LEVITRON by defendants has been without permission or authority of Creative Gifts or its licensee Fascinations. Such unauthorized use constitutes willful infringement of the LEVITRON® mark.

41. Creative Gifts has customers in the same geographic area as defendants, and defendants' unauthorized use of the LEVITRON mark is likely to cause confusion and mistake in the minds of the trade and the purchasing public, and, in particular, tends to and does falsely create the impression that the instructional videos offered for sale by defendants originate with or are licensed, sponsored, approved or otherwise connected with Creative Gifts.

42. Defendants had clear and unequivocal knowledge of Creative Gifts' rights in and to its LEVITRON® trademark, and intentionally and purposefully commenced and continue the infringing activities in an effort to cause confusion, mistake and deception, all in violation and disregard of Creative Gifts' trademark rights.

43. Defendants have caused, and unless restrained by this Court, will continue to cause, irreparable injury and damage to Creative Gifts and Fascinations and the goodwill associated with Creative Gifts' LEVITRON® trademark.

9

44. Neither Creative Gifts nor Fascinations has any adequate remedy at law, are suffering irreparable harm and damage as a result of the aforesaid acts of defendants in an amount thus far not determined, and, unless restrained by this Court, will continue to cause irreparable injury and damage to Creative Gifts and Fascinations and the goodwill associated with Creative Gifts' LEVITRON® trademark.

## COUNT II
## FALSE DESIGNATION OF ORIGIN

45. This Count, arising under Section 43(a) of the Trademark Act of 1946 (15 U.S.C. §1125(a)), is for false designation of origin and federal unfair competition

46. Plaintiffs reallege each and every allegation as set forth in paragraphs 1-44 of the Complaint as fully set forth herein.

47. Defendants' unauthorized use of the LEVITRON® mark in interstate commerce in connection with the sale of instructional videos for magnetic levitation devices constitutes a false designation of origin which is likely to deceive, and has deceived, purchasers into believing that defendants' videos originate from Creative Gifts or Fascinations, and, as a consequence, is likely to divert customers away from Creative Gifts or Fascinations.

48. Neither Creative Gifts nor Fascinations has any control over the quality of the videos sold by defendants, and unless restrained by this Court, defendants' unfair trade practices will continue to cause irreparable injury and damage to Creative Gifts or Fascinations.

49. Neither Creative Gifts nor Fascinations has any adequate remedy at law, are suffering irreparable harm and damage as a result of the aforesaid acts of defendants in an amount thus far not determined, and, unless restrained by this Court, will continue to cause

irreparable injury and damage to Creative Gifts and Fascinations and the goodwill associated with Creative Gifts' LEVITRON® trademark.

COUNT III<br>DILUTION OF FAMOUS TRADEMARK

50. This Count, arising under Section 43(c) of the Trademark Act of 1946 (15 U.S.C. §1125(c)), is for dilution of Creative Gifts' famous LEVITRON® mark.

51. Plaintiffs reallege each and every allegation as set forth in paragraphs 1-49 of the Complaint as fully set forth herein.

52. Creative Gifts' LEVITRON® trademark is famous and distinctive.

53. Defendants are continuing commercial use of the LEVITRON® mark despite receiving notice from Creative Gifts that such use is unauthorized.

54. Defendants' continued use of LEVITRON in connection with videotapes and as a domain name is likely to cause dilution of Creative Gifts' famous and distinctive LEVITRON® trademark.

55. Upon information and belief, defendants' continued use of LEVITRON is intended to appropriate and trade upon the goodwill and reputation associated with Creative Gifts' LEVITRON® trademark, and to cause dilution of Creative Gifts' famous LEVITRON® trademark, and has continued in total disregard of the resultant damage and injury to Creative Gifts and its trademark.

56. By reason of the foregoing, defendants have engaged in, and are continuing to engage in, acts which are diluting and blurring the distinctive quality of Creative Gifts' LEVITRON® trademark, and unless restrained by this Court, defendants will continue to cause

11

irreparable injury and damage to Creative Gifts and Fascinations.

57. Neither Creative Gifts nor Fascinations has any adequate remedy at law, are suffering irreparable harm and damage as a result of the aforesaid acts of defendants in an amount thus far not determined, and, unless restrained by this Court, will continue to cause irreparable injury and damage to Creative Gifts and the goodwill associated with Creative Gifts' LEVITRON® trademark.

## COUNT IV
### DILUTION OF AND INJURY TO BUSINESS REPUTATION

58. This Count, arising under the New Mexico Trademark Act, 57-3B-1 to 57-3B-17 N.M.Stat.Ann.1978, is for dilution of the distinctive quality of Creative Gifts' LEVITRON® mark and for injuring Creative Gifts' business reputation.

59. Plaintiffs reallege each and every allegation as set forth in paragraphs 1-57 of the Complaint as fully set forth herein.

60. Defendants' use of Creative Gifts' LEVITRON® mark is without the permission, consent or authorization of Creative Gifts or its licensee Fascinations and has and is blurring and tarnishing the reputation of Creative Gifts' unique, publicly recognized, distinctive and famous trademark LEVITRON®, thereby diminishing its value.

61. Upon information and belief, defendants' continued use of LEVITRON® is intended to appropriate and trade upon the goodwill and reputation associated with Creative Gifts' LEVITRON® trademark, and has continued in total disregard of the resultant damage and injury to Creative Gifts and its trademark.

62. By reason of the foregoing, defendants have engaged in, and are continuing to

12

engage in, acts which are diluting and blurring the distinctive quality of Creative Gifts' LEVITRON® mark and injuring Creative Gifts' and Fascinations' business reputation, and unless restrained by this Court, defendants will continue to cause irreparable injury and damage to Creative Gifts and Fascinations.

63. Neither Creative Gifts nor Fascinations has any adequate remedy at law, are suffering irreparable harm and damage as a result of the aforesaid acts of defendants in an amount thus far not determined, and, unless restrained by this Court, will continue to cause irreparable injury and damage to Creative Gifts and Fascinations and the goodwill associated with Creative Gifts' LEVITRON® trademark.

## COUNT V
## UNFAIR TRADE PRACTICES

64. This Count, arising under the New Mexico Unfair Trade Practices Act, 57-12-1 to 57-12-22 N.M.Stat.Ann. 1978, is for unfair and deceptive trade practices, including disparagement and injury to business reputation.

65. Plaintiffs reallege each and every allegation as set forth in paragraphs 1-63 of the Complaint as fully set forth herein.

66. By use of LEVITRON as a domain name and in association with its instructional videos, defendants have knowingly made false or misleading statements in connection with the sale of goods which may, tends to or does deceive ro mislead consumers thereby causing, *inter alia*, confusion or misunderstanding as to source, sponsorship, approval, affiliation, connection or association between defendants and Creative Gifts and/or Fascinations.

67. Upon information and belief, Defendants, jointly and severally, intentionally

13

made false or misleading statements concerning Hones which may, tends to or does harm Hones' businesses, including Creative Gifts and Fascinations. Specifically, Defendants intentionally placed on their web site a derogatory article, authored by the Sherlocks, calling Hones a "thief and a liar", among other things, and have published letters written by defendants to third parties in which false and misleading statements were made. Defendants, by their acts, intended to disparage the goods of Fascinations, and the business reputation of plaintiffs.

68. Upon information and belief, Defendants' false or misleading statements were published with knowledge of the falsity contained therein and with reckless disregard for the harm that they would do to plaintiffs.

69. Defendants' false or misleading statements and accusations have caused, and continue to cause, harm to the businesses with which Hones is involved, including Creative Gifts and Fascinations, have irreparably injured the business reputation of Creative Gifts and Fascinations, have already deterred CBC from advertising plaintiffs' LEVITRON® devices on the Art Bell shows, and are likely to deter others from associating or dealing with Creative Gifts or Fascinations. Plaintiffs' injury has been immediate and is evidenced by the e-mail messages published on defendants' web site received by defendants in response to defendants' article having the false or defamatory statements, and in e-mail messages sent directly to Hones.

70. Plaintiffs have no adequate remedy at law, are suffering irreparable harm and damage as a result of the aforesaid acts of defendants in an amount thus far not determined, and, unless restrained by this Court, will continue to cause irreparable injury and damage to plaintiffs, including the goodwill associated with Creative Gifts' LEVITRON® trademark.

14

## COUNT VI
## DEFAMATION

71.	This Count, arising under the common law of New Mexico, is for defamation.

72.	Plaintiffs reallege each and every allegation as set forth in paragraphs 1-69 of the Complaint as fully set forth herein.

73.	Upon information and belief, Defendants, jointly and severally, intentionally made false and defamatory statements concerning Hones with actual knowledge that such statements were false or defamatory or in reckless disregard to whether such statements were true or false, which statements have proximately harmed Hones and his businesses, including Creative Gifts and Fascinations. Specifically, Defendants intentionally placed on their web site an article, authored by the Sherlocks, calling Hones a "thief and a liar", among other things, and have published letters written by defendants to third parties in which false and defamatory statements were knowingly made. Defendants' acts were intended to be published and were published to third parties.

74.	Upon information and belief, Defendants' defamatory communications concerning Hones were published with malice, with knowledge of the falsity contained therein or with reckless disregard to whether such statements were true or false, and with reckless disregard for the harm that they would do to Hones and his businesses.

75.	Defendants' communications to the general public on defendants' web site were not privileged publications to third parties.

76.	Upon information and belief, Defendants' false statements and accusations have caused, and continue to cause, harm to Hones' reputation, have diminished Hones' standing in

15

the community, have diminished Hones' character and reputation as a businessman and inventor, have irreparably injured the business reputation of Hones and his companies, including Creative Gifts and Fascinations, and are likely to deter others from associating or dealing with Hones or his businesses. Plaintiffs' injury has been immediate and is evidenced by the e-mail messages published on defendants' web site received by defendants in response to defendants' article having the false and defamatory statements, and in e-mail messages sent directly to Hones.

77. Defendants have failed to retract the defamatory communications from their home page.

78. Defendants' acts resulted in the defamation of plaintiffs, particularly Hones, for which all defendants are jointly and severally liable.

79. Plaintiffs have no adequate remedy at law, are suffering irreparable harm and damage as a result of the aforesaid acts of defendants in an amount thus far not determined, and, unless restrained by this Court, will continue to cause irreparable injury and damage to plaintiffs.

## COUNT VII
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

80. This Count, arising under the common law of New Mexico, is for intentional interference with prospective contractual relations.

81. Plaintiffs reallege each and every allegation as set forth in paragraphs 1-78 of the Complaint as fully set forth herein.

82. Upon information and belief, Defendants, jointly and severally, intentionally made statements to CBC regarding purported legal issues surrounding Creative Gifts' rights in the LEVITRON® devices and the LEVITRON® trademark.

16

83.   Defendants made the statements with the intent of injuring plaintiffs. Specifically, it was defendants' intent to prevent plaintiffs from contracting with CBC to secure advertising spots on the Art Bell shows, an advertising market that had proven extremely successful for defendants.

84.   Defendants' intentional acts were without justification or privilege.

85.   As a direct and proximate result of defendants' wrongful acts alleged herein, plaintiffs have had their reputation irreparably tarnished and have lost the opportunity to exploit a lucrative marketing channel, all to the commercial detriment of plaintiffs.

86.   Plaintiffs have no adequate remedy at law and have suffered and are suffering irreparable harm and damage as a result of the aforesaid acts of defendants in an amount thus far not determined, but believed to be in excess of $600,000.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray this Court:

(a)   Preliminarily and permanently enjoin and restrain defendants, including UFO's officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with it, from (i) using the mark LEVITRON® or any other mark confusingly similar to the mark in connection with the manufacture, sale, advertising or distribution of magnetic levitating devices or instructional videos for magnetic levitating devices; (ii) otherwise infringing or diluting Creative Gifts' LEVITRON® trademark;  (iii) affixing, applying, annexing or using in connection with the sale of any goods a false designation, description or representation, including words or other symbols tending to falsely designate, describe or represent such goods as being legitimate Fascinations products or otherwise being associated with or originating with

Creative Gifts, Fascinations or Hones; (iv) unfairly competing with Creative Gifts or Fascinations or diluting or otherwise injuring the business reputation of Creative Gifts and Fascinations in any manner; and (v) using the LEVITRON® mark in any descriptive, or generic manner;

(b) Order that the domain name "LEVITRON.com" be immediately transferred to Creative Gifts, and that all material currently posted on defendants' web page be immediately removed;

(c) Order defendants to remove and destroy all items not originating from plaintiffs and having LEVITRON®, or a variant thereof, or a descriptive or generic use of the LEVITRON® mark printed or otherwise provided thereon;

(d) Order defendants to destroy all stationary, business cards, and other materials having the infringing mark LEVITRON®, or a variant thereof, or a descriptive or generic use of the LEVITRON® mark printed or otherwise provided thereon;

(e) Order that defendants report to the Court in writing under oath with a copy to plaintiffs' counsel within ten (10) days of service of Notice of Order hereunder setting in forth in detail the manner in which defendants have complied with said Order;

(f) Order that defendants account for and pay over to plaintiffs all gains, profits and advantages derived by them from the aforesaid acts of trademark infringement, false designation of origin, trademark dilution and unfair competition and that the award to plaintiffs be increased as provided for under 15 U.S.C. §1117;

(g) Order defendants to place corrective advertising in national newspapers and trade publications for restoring the reputation of Hones and the lost goodwill resulting from said

infringement, unfair trade practices and defamation;

(h) Order defendants to send a letter to CBC retracting all allegations made to CBC regarding plaintiffs;

(i) Order defendants to place advertisements on the Art Bell show retracting all allegations made to CBC regarding plaintiffs and apologizing to Hones;

(j) Order defendants to pay plaintiffs damages, including exemplary and punitive damages, for all acts of infringement, dilution, unfair trade practices, defamation and intentional inference with contractual relations in an amount to be determined at trial;

(k) Order defendants jointly and severally to pay the costs, including attorneys' fees, incurred in this action as provided by, *inter alia*, 57-12-10(c) N.M. Stat. Ann. 1978 and 15 U.S.C. § 1117; and

(l) That plaintiffs have such other and further relief as this Court may deem just and proper.

Respectfully submitted this 24 day of September, 1997.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: *DeWitt M. Morgan*
DeWitt M. Morgan
201 Third Street, NW, Suite 2200
Albuquerque, New Mexico 87102
(505) 768-5900

Of Counsel:
George C. Myers, Jr.
Saul Leitner
Paul J. Riley
WIGMAN, COHEN, LEITNER & MYERS, P.C.
900 17th Street, N.W., Suite 1000
Washington, D.C. 20006
.(202) 463-7700