IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CREATIVE GIFTS, INC.,**
**FASCINATIONS TOYS & GIFTS, INC.,**
**and WILLIAM HONES,**

        **Plaintiffs,**

v.                                                                                                CIV. No. 97-1266 LH/WWD

**UFO, MICHAEL SHERLOCK**
**and KAREN SHERLOCK,**

        **Defendants.**

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on Defendants' Objections to Judge Deatons's Report and Recommendations (Doc. No. 119)(hereafter "Report"). Judge Deaton's Report recommends that this Court enter an Order pursuant to FED.R.CIV.P. 37(b)(2)(C) striking the twenty-three (23) counts contained in Defendants' counterclaim.[1]

For the reasons set forth below, Judge Deaton's Report and Recommendations are hereby **affirmed** and **adopted**. This affirmation results in several procedural ramifications that are set forth fully in a separate Order, filed contemporaneously with this Memorandum Opinion.

---

[1] On July 30, 1998, Defendants filed a Motion and Memorandum to Reconsider 7/28/98 Report and Recommendation (Doc. No. 109). Judge Deaton denied this motion on September 16, 1998 (Doc. No. 124).

**Judge Deaton's Report and Recommendation**

Judge Deaton's Report was written in response to two motions filed by Plaintiffs.  He first addressed Plaintiffs' Motion Pursuant to Fed.R.Civ.P. 37 for an Order Compelling Disclosure (Doc. No. 85) in his Report.  This motion sought "an order compelling Karen Sherlock (Sherlock) to answer questions under oath regarding Defendants' ...efforts to import, sell, market, and/or have manufactured anti-gravity tops." *Id*. at 1.  In his Report, Judge Deaton mentioned the June 6, 1998 Order he entered, denying Defendants' Motion for Protective Order and instructing Ms. Sherlock to answer certain questions.  Upon Ms. Sherlock's subsequent offer to give written answers to these questions, in his Report, Judge Deaton explains the measures he took to "strongly suggest" that in effect she would suffer various consequences if she refused to orally answer the questions. Judge Deaton describes Ms. Sherlock's subsequent June 10, 1998 deposition as revealing "page after page of obstructive and improper objections being interposed in such a way as to make any reasonable inquiry virtually impossible." (Report at 1.)  Judge Deaton concluded that Ms. Sherlock's conduct at the deposition "can be viewed only as a deliberate and obstinate refusal to submit to the orders and procedures of the Court". (Report at 1).  He based this conclusion on the existence of a confidentiality order entered in this cause, the content of his June 6, 1998 Order, and the suggestions he gave to Ms. Sherlock at the time of her deposition.  This deposition was held in his conference room "to allow stricter control of the parties" (Report at 2, n.1).

In their motion  to compel, Plaintiffs sought to have Ms. Sherlock's deposition reconvened

at Defendants' expense.  Judge Deaton rejected this approach in his Report, stating that he did not believe such an order would be effective.

The second motion before Judge Deaton at the time he entered his Report was Plaintiff's Motion and Memorandum to Compel (Doc. No. 82), wherein Plaintiffs sought to compel production of certain documents, as previously ordered by Judge Deaton.  After a discussion of Defendants' offers, objections and of their limited actual production made to Plaintiffs, all of which were contrary to the April 14, 1998 Order, Judge Deaton concludes that these constitute "the same tactics of resistance and obstruction in document production that appears in the deposition of Ms. Sherlock".  (Report at 2).

Judge Deaton's Report concludes that Defendants' continuing misconduct clearly indicates a disdain for the orders and procedures of this Court and that such misconduct should no longer be countenanced by this Court.  It is his opinion that more than adequate accommodation has been made for Defendants because they are *pro se*.  Based upon the foregoing, he recommended that Defendants' counterclaims should be dismissed. (Report at 2-3).

**Judge Deaton's Denial of the Motion to Reconsider**

In addressing Defendants' motion to reconsider (See Memorandum Opinion and Order, Doc. No. 124), Judge Deaton concluded that Defendants had presented no just reason for him to reconsider and change the conclusions contained in his report.  He noted that, while Defendants apologize and offer to make Ms. Sherlock available for a supplemental deposition, that re-argument of this issue, already reasoned and decided by the Court, is inappropriate and that ignorance or unfamiliarity with the law is an insufficient basis for reconsideration, given the wide

array of circumstances on which he based his recommendation.  There was nothing in Defendants'
motion to reconsider that caused Judge Deaton to conclude that he had patently misunderstood a
party, made a decision outside the adversarial issues presented to the court, or made an error of
apprehension.  Finally, Judge Deaton concluded that Defendants' misconduct was willful:
"[T]hroughout the discovery process the defendants have continued to resort to obstructive
tactics and inappropriate behavior even after being instructed to proceed otherwise."  (Doc. No.
124).

**Discussion**

Judge Deaton's recommended dismissal of Defendants' counterclaim is a dispositive one and as such, requires *de novo* review by this Court.  *See Ocelot Oil Corp., et al. v. Sparrow Industries, et al.,* 847 F.2d 1458, 1462 (10th Cir. 1988);  *Seattle-First Nat'l Bank v. Carlstedt et al.*, 800 F.2d 1008, 1010 (10th Cir. 1986)(dismissal of counterclaim considered a dismissal on pleadings, disposing of defendant's ability to sue plaintiffs.)

Tenth Circuit case law makes it clear that a district judge may dismiss an action for discovery violations.  *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992);  *see also Archibeque v. Atchison, Topeka and Santa Fe Railway Company*, 70 F.3d 1172 (10th Cir. 1995). Federal Rule of Procedure 37(b)(2)(C) authorizes a court to enter an order dismissing the action if a party "fails to obey an order to provide or permit discovery".  Because of the harshness of dismissal, however, due process requires that the discovery violation be predicated upon "willfulness, bad faith, or [some] fault of petitioner" rather than inability to comply. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)(*quoting Societe*

*Internationale v. Rogers,* 357 U.S. 197, 212 (1958).

The Tenth Circuit has provided a framework of facts that should ordinarily be considered by a trial court prior to dismissal. *Mobley v. McCormick*, 69 F.3d 548 (10th Cir.1995); *Ehrenhaus*, 965 F.2d at 921. These factors are not a rigid test however; any determination of a correct sanction is a fact specific inquiry that the district court is in the best position to make. *Ehrenhaus*, 965 F.2d at 920-21. Analysis of these factors supports the Court's dismissal of Defendants' counterclaim.

These factors include "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and, (5) the efficacy of lesser sanctions." *Id*. at 921 (citations omitted). These factors are ordinarily evaluated on the record. *Id*.

With respect to the first factor, the Court finds that Plaintiffs have been severely prejudiced in the preparation of their case by Defendants' failures to comply with Judge Deaton's discovery orders and rulings. Judge Deaton has been intimately involved in the discovery process and he noted that Defendants' conduct has caused Plaintiffs needless delay and expense. (Doc. No. 124 at 3). I have reviewed the numerous discovery orders prepared by Judge Deaton in this case. It is apparent from this record that Defendants' failure to comply with Judge Deaton's oral and written rulings, particularly during the deposition phase of the case, has severely prejudiced Plaintiffs in the preparation of their case.

With respect to the second factor, by failing to comply with Judge Deaton's orders and federal rules of civil procedure, Defendants have obstructed the judicial process. Having reviewed

portions of the deposition transcript provided to me, I find it replete with obstructive behavior. For example, there are many instances where Mr. Sherlock has called Mr. Hones and his attorney, Mr. Riley, a "liar" or "perjurer", has been abusive, insulting, asked questions about Mr. Hones' wife's religion, and engaged in other belligerent and childish behavior. According to the affidavit of Paul J. Riley[2], on the second day of Mr. Hones' deposition, Judge Deaton found it necessary to move the depositions from his conference room to his courtroom and ordered that the court security personnel be in attendance at all further deposition proceedings for security purposes. At that juncture, Judge Deaton told the parties that he had contacted the district judge and that if there were further violations of Judge Deaton's order to proceed in discovery in a civil and courteous way, that the parties would appear before the district judge for contempt proceedings. Judge Deaton mentioned that if his order were contemptuously disobeyed, that there would be sanctions.

Mr. Riley's affidavit also sets forth a description of extremely belligerent conduct by Mr. Sherlock during one of the recesses from a deposition, during which Mr. Sherlock made threatening physical advances toward him and repeatedly called him "pimp".

Furthermore, a reading of Ms. Sherlock's June 10, 1998 deposition reveals severe obstruction of the discovery process. I reviewed significant parts of the deposition testimony of Ms. Sherlock, taken shortly after Judge Deaton's Order and admonitions to her. I completely agree with Judge Deaton's characterization of this testimony: it is replete with obstructive and improper objections, making reasonable inquiry virtually impossible. This deliberate and obstinate refusal to obey court orders was done despite her knowledge of potential serious consequences.

---

[2]Exhibit 5 to Plaintiffs' motion.

At the end of her deposition she stated her understanding that if Judge Deaton had ordered them to answer question and they did not answer, then Defendants might be held in contempt.  "I think he [Judge Deaton] used the phrase we'd go up and see Judge Hansen."  (K. Sherlock Depo. at 404).

Defendants' misconduct in this case has been longstanding.  Prior to the commencement of the taking of depositions, Defendants requested that Judge Deaton allow some of the depositions to be taken at their home in Kingston, New Mexico.  Addressing that request in a Memorandum Opinion and Order, on March 16, 1998, Judge Deaton noted that "Defendant Michael Sherlock has comported himself in such a way as to warrant the exercise of caution by the Court in selecting the place for depositions...".  (Doc. No. 46).  It was in this March Order that Judge Deaton ordered depositions to be taken in his conference room so that he would be available to rule as necessary should questions arise during the depositions, and so there would be no question about appearing on the "turf" of one party or another.  *Id*. at 2.  Furthermore, I note that Defendants initially refused to attend their properly scheduled depositions and that it became necessary for Judge Deaton to order them to appear on April 28, 1998. (Doc. No. 58).

Insofar as the third factor is concerned —i.e., the culpability of Defendants, the Court has borne in mind  the *pro se* status of Defendants.  As Judge Deaton stated on the record prior to Ms. Sherlock's June 10, 1998 deposition, he attempted to be liberal and very helpful to Defendants, without assuming the role of advocate for them.  *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992).  Defendants are obviously intelligent people and from the appearance of their pleadings they are either far above average *pro se* litigants or they have

7

received assistance from off-the-record attorney(s).[3]  Defendants represent that they possess a copy of the Rules of Civil Procedure, and they are charged with the knowledge of these rules, including Rule 37.  While Defendants plead ignorance of the law as an excuse for their behavior, I agree with the Plaintiffs in their assertion there is no excuse for this type of behavior. Defendants have repeatedly and adamantly disregarded the clear orders of the Court. The repetitious nature of Defendants' refusal to cooperate leads this Court to conclude that they are culpable, despite their supposed  previous *pro se*  status.  As noted by Judge Deaton, Defendants' behavior can be interpreted as nothing other than intended to be disruptive to the judicial process. (Doc. No. 124).

Claiming "ignorance", Defendants say that their understanding of the litigation process was based on a "distorted layperson's views gained from unreliable sources", and that they did not properly understand the level of civility that takes place in litigation . Despite their status as *pro se* litigants, given the severity of misconduct, these excuses are simply insufficient.

Furthermore, I note that, on the document production issue, Defendants now admit in their Objections to the Report, that they "had no proper grounds for refusal to produce documents on the grounds of confidential trade secret information because a Protective Order was in place." (Doc. No.119 at 6).

I am cognizant that this Court must ensure that a *pro se* litigant does not unknowingly lose its right of access to the courts, particularly for technical violations.  *See, e.g., Mitchell v. Inman*, 682 F.2d 886, 887 (11th Cir. 1982)(per curiam).  My evaluation of the factual circumstances here

---

[3]There is some question as to whether during the time relevant to this issue, Defendants were truly proceeding without assistance of counsel  The deposition testimony makes references to consulation with Defendants' current counsel, Paul Adams.  (M. Sherlock Depo. at 599–CHECK THIS).  Additionally, Plaintiffs state that Defendants have had a longstanding consultation with Cleveland attorney Michael W. Vary.

lead me to conclude that Defendants' conduct far exceeds unknowing technical violations.  I interpret this conduct as willful and as being done with the intent to harass and delay.

Even if *pro se,* although the Court allows a certain flexibility for parties representing themselves, *pro se* litigants are bound by the same rules of procedure as other litigants.  *See Green v. Dorrell,* 969 F. Supp. 63, 64 (E.D.Pa. 1996).  They are required to know the rules of civil procedure, including Rule 37, which provides that claims of a party may be dismissed for this type of egregious conduct.

As to the fourth factor, the effectiveness of lesser sanctions, as explained above, Judge Deaton has made repeated efforts in various ways to control the conduct of Defendants.  I also note that, even when knowingly facing contempt proceedings before the district court judge, Defendants comported themselves in an entirely unacceptable manner at the June 10, 1998 deposition of Ms. Sherlock.   It is Judge Deaton's conclusion that reconvening Ms. Sherlock's deposition at Defendants' expense would be ineffective (Report at 2).  As I read Judge Deaton's Report and Memorandum Opinion and Order on the reconsideration issue, it is his conclusion that any attempts to obtain discovery from Defendants, as ordered, will be futile.  I have no reason to disagree with this conclusion, especially given Judge Deaton's vast experience in these types of discovery proceedings in general, and with these litigants in particular.  Having reviewed the complete record in this matter, and based upon my recollection of Defendants' unruly conduct in my courtroom several months ago, I also conclude that the imposition of a lesser sanction would not have any effectiveness.

Under the *Ehrenhaus* case, prior to dismissal of any claims, the Court should consider any advance warning given to a party that non-compliance would likely result in imposition of severe

9

sanctions.  Here, Judge Deaton informed Ms. Sherlock that if she did not comply with his outstanding orders that it "would be her problem" and he warned the Defendants of the possibility of contempt hearings.  Because Defendants are not attorneys, it is possible and even likely that they did not understand that further violations could result in a dismissal of their counterclaim.  The Court is unconvinced that even had Defendants understood this possible ramification, that they would have become compliant, given their total prior lack of regard for the authority of the Court, coupled with their clear desire to harass and abuse Plaintiffs.

When a party takes a cavalier approach to its discovery obligations, the entry of a dismissal with prejudice is an appropriate sanction.  *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 922 (10th Cir. 1992);  *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992).  While dismissal with prejudice is a harsh action, to be used only in extreme circumstances, the Court is mindful that "[d]eliberate, repeated refusals to comply with discovery orders...justify the use of this ultimate sanction."*Kabbe v. Rotan Mosle, Inc.*, 752 F.2d 1083 (5th Cir. 1985)( *quoting Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979)).

**Conclusion**

I know that Judge Deaton has been more extensively and directly involved in this case than he is in most cases.  I know that he has first-hand knowledge of the misconduct of Defendants during this case and that he has taken extraordinary steps to facilitate discovery between two parties that are extremely acrimonious.  It appears from the record that the difficult dynamics between the parties at the outset of this litigation have been worsened by the extreme misconduct of the Defendants in this matter, particularly that of Mr. Sherlock.

Under the circumstances of this case, the Court determines that imposition of Rule 37 sanctions are appropriately entered.  After giving consideration to each of the applicable *Ehrenhaus v. Reynolds* factors, the Court concludes that Defendants' counterclaim should be dismissed with prejudice.

For the foregoing reasons, I conclude that the Court shall affirm and adopt Judge Deaton's Report and Recommendations; that Defendants' Objections are **denied**; and that Defendants' twenty-three (23) counts of their counterclaim are hereby **dismissed with prejudice.**

Both parties shall bear their own costs and attorney fees related to this issue.

**IT IS SO ORDERED**.

_____
**U.S. DISTRICT COURT JUDGE**

11